**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

FILED

03 JUN 20 PM 2: 28

U.S. D.... .... ..
N.D. OF ALABAMA

| | |
|---|---|
| **RITA CHILDERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   Civil Action No. CV-03-S-313-NW |
| | ) |
| **CONTINENTAL CASUALTY** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

ENTERED

JUN 2 0 20

### MEMORANDUM OPINION

Plaintiff filed a complaint on January 8, 2003, in the Circuit Court of Lauderdale County, Alabama, asserting state law claims of breach of contract, fraud and misrepresentation, bad faith, and outrage against defendant.[1] All of plaintiff's claims are based upon defendant's denial of benefits under a long term disability insurance policy plaintiff obtained while employed by Prestolite Electric, Inc. ("Prestolite"). On February 12, 2003, defendant filed a notice of removal, stating that plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendant filed a motion to dismiss or, in the alternative, motion for summary judgment on February 18, 2003, seeking to dismiss plaintiff's state law claims without prejudice, with leave to replead her claims under ERISA.[2] Because the motion to dismiss was accompanied by evidentiary material, this court entered a submission order on February 24, 2003, advising the parties that the motion would be treated as a motion for summary judgment, and would be deemed submitted for decision as of March 31, 2003.[3] Rather than opposing the motion for summary

---

[1]Doc. no. 1 (Complaint, appended to Notice of Removal).

[2]Doc. no. 2.

[3]Doc. no. 3.

judgment, plaintiff filed a motion to remand on March 25, 2003, asserting that the disability insurance plan at issue in this action falls within the "safe-harbor" regulation found in 29 C.F.R. § 2510.3(j) (2003), such that her state law claims are not preempted by ERISA. Plaintiff submitted an affidavit in support of her contention.[4] Accordingly, the court withdrew the submission order and directed the parties to submit briefs addressing the "safe-harbor" regulation. Both parties filed briefs, and defendant submitted supporting evidentiary materials opposing the motion to remand.[5]

The Eleventh Circuit evaluated whether a plaintiff's state law claims were "superpreempted" by ERISA, such that defendant's removal of the action to federal court was proper, in *Butero v. Royal Maccabees Life Insurance Company,* 174 F.3d 1207 (11th Cir. 1999). There, the Court of Appeals reiterated the four elements that must be satisfied for complete preemption, and, accordingly, a basis for federal subject matter jurisdiction:

> First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an ERISA entity. Finally, the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan.

*Id.* at 1212. By arguing that the "safe-harbor" regulation applies, plaintiff's motion to remand essentially challenges the first element: whether there is a relevant ERISA plan.

The regulation at issue provides as follows:

> (j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefits plan" and "welfare plan" *shall not include* a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> > (1) No contributions are made by an employer or employee organization;
> >
> > (2) Participation in the program is completely voluntary for employees or

---

[4]Doc. no. 5.
[5]Doc. no. 8.

members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer;

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510-3.1(j) (2003) (emphasis supplied).  For the regulation to apply, each of the four

elements must be satisfied.  *See Butero*, 174 F.3d at 1213.  As in *Butero*, the first, second, and fourth

elements have been satisfied, leaving only the third element in dispute.  With respect to that element,

according to the Eleventh Circuit, "[t]he regulation explicitly obliges the employer who seeks its safe

harbor to refrain from any functions other than permitting the insurer to publicize the program and

collecting premiums."  *Id.*

In support of plaintiff's argument that the insurance policy at issue should not be considered

an "employee benefits welfare plan" under ERISA, she submitted an affidavit, stating:

Prior to my becoming disabled, I was an employee of Prestolite Electric, Inc., and had been so for 28 years.  I myself purchased my disability insurance policy with Continental Casualty Company, and paid all of the premiums for same.  No contributions were made by my former employer, Prestolite Electric, Inc. (hereinafter referred to as "Prestolite"), and my participation in this program was completely voluntary.  *No one from Prestolite recommended that we purchase said disability insurance coverage, but it was merely offered to any employee who wished to pay for same.*

I never spoke with anyone from Prestolite concerning this coverage, and since my disability began, all of my dealings have been with representatives of Continental Casualty Company.  *Prestolite's only role in this matter was deducting these premiums from my payroll check, and I, along with other employees, were [sic] told by Prestolite representatives that any claims would be filed with and handled by*

3

representatives of Continental Casualty Company.[6]

Defendant, however, has submitted evidence demonstrating that plaintiff's employer's involvement with the plan was more extensive. Specifically, defendant submitted the declaration of Karen Oldham, the manager of Corporate Human Resources for Prestolite. Ms. Oldham explained that Prestolite decided key terms of the insurance policy, such as the amount of disability benefits offered under the Plan, whether the plan was limited to full-time employees, and whether certain classifications of employees would be ineligible for benefits. She further stated that "Prestolite incorporated the terms of the Continental long term disability policy into the summary plan descriptions provided to all employees regarding those various benefits," provided enrollment forms, and negotiated amendments to the Plan on behalf of its employees.[7] Defendant also provided a copy of the cover letter and claim form submitted by Rose Hammonds, Prestolite's Personnel Representative, to defendant on behalf of plaintiff. The claim form indicates that it was completed by Ms. Hammonds. Based on the foregoing, the court concludes that here, as in *Butero*, the employer did "a lot more" than merely publicizing defendant's insurance plan and collecting premiums. 174 F.3d at 1213-14. Accordingly, the safe harbor regulation provides no refuge to plaintiff.

The inquiry does not end there, however. *See id.* at 1214 (the fact that the safe harbor was barred did not necessarily mean that the insurance policy is part of an ERISA plan). An "employee welfare benefit plan" subject to the provisions of ERISA is any (1) plan, fund or program, (2) established or maintained, (3) by an employer, (4) to provide beneficiaries, (5) certain insurance and

---

[6]Doc. no. 5 (Affidavit of plaintiff, appended to motion to remand) (emphasis supplied).

[7]Doc. no. 8 (Continental's Brief in Response to the Court's March 26, 2003 Order), ex. A (declaration of Karen Oldham).

4

other benefits.  29 U.S.C. § 1002(1).  With respect to the first element, "[a]n ERISA plan exists whenever there are 'intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.'"  *Butero*, 174 F.3d at 1214 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (en banc)).  The intended benefits were those paid to employees who established in accordance with the terms of the policy that they were disabled, and those disabled employees were the intended beneficiaries.  The source of financing was the collection of premiums through payroll deduction, and, as demonstrated by the claim form, a procedure was established for applying for and collecting benefits.  Moreover, the record contains ample support for concluding that the remaining elements have been satisfied.

For all of the foregoing reasons, the court concludes that plaintiff's state law claims are completely preempted by ERISA, and plaintiff's motion to remand is due to be denied.  Because plaintiff's claims are subject to complete preemption, they are defensively preempted as well, and are subject to dismissal.  *See Butero*, 174 F.3d at 1215.  However, plaintiff shall be given leave to file an amended complaint, stating a proper claim under ERISA.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this _20th_ day of June, 2003.

_____

United States District Judge